**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff*
Jason Guerrero

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JASON GUERRERO,

      Plaintiff,

      vs.

CITY OF ONTARIO; LOURDES MARTINEZ; WILLIAM MLODZINSKI; GREGORY CLINTON; SETH BLACK; and DOES 1-10, inclusive.

      Defendants.

Case No.: _____

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment—Excessive Force (42 U.S.C. §1983)
2. Municipal Liability—Ratification (42 U.S.C. §1983)
3. Municipal Liability—Inadequate Training (42 U.S.C. §1983)
4. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. §1983)
5. Battery
6. Negligence
7. Violation of Cal. Civil Code §52.1

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff JASON GUERRERO, for his Complaint against Defendants CITY OF ONTARIO; LOURDES MARTINEZ; WILLIAM MLODZINSKI; GREGORY CLINTON; SETH BLACK; and DOES 1-10, inclusive, and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States, including 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

2.      This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

4.      On or around February 13, 2025, Plaintiff served his comprehensive and timely claim for damages with the CITY OF ONTARIO pursuant to applicable sections of the California Government Code. (*See* Government Code section 911.2(a)) On March 30, 2025, Plaintiff's claim was deemed denied by operation of law. (*See* Government Code section 911.6(c))

## INTRODUCTION

5.      This civil rights and state tort action arises out of the September 11, 2024, use of excessive and unreasonable force, including deadly force, on Plaintiff JASON GUERRERO by Defendant Officers LOURDES MARTINEZ,

WILLIAM MLODZINSKI, GREGORY CLINTON, SETH BLACK, and all CITY OF ONTARIO Police Officers. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, and costs from Defendants for violating various rights guaranteed to Plaintiff by the Bill of Rights, the United States Constitution, the California Constitution, and the laws of the State of California.

6.    Defendants LOURDES MARTINEZ, WILLIAM MLODZINSKI, GREGORY CLINTON, SETH BLACK, and DOES 1-10, inclusive, caused various injuries by repeatedly kneeing Plaintiff, who was not an immediate threat of death or serious bodily injury as described herein, and/or by integrally participating or failing to intervene in the use of excessive and unreasonable force used against Plaintiff.

7.    This action is in the public interest as Plaintiff seeks by means of this action to hold accountable those responsible for the serious bodily injury inflicted by Defendants.

## **PARTIES**

8.    At all relevant times, Plaintiff JASON GUERRERO ("GUERRERO") is and was an individual residing in the County of San Bernardino, California.

9.    At all relevant times, Defendant CITY OF ONTARIO ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Ontario Police Department ("OPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the OPD and its employees and agents complied with the laws of the United States and of the

State of California. At all relevant times, CITY was the employer of Defendant Officers LOURDES MARTINEZ, WILLIAM MLODZINSKI, GREGORY CLINTON, and DOES 1-5, inclusive. As set forth below, Plaintiff GUERRERO alleges that Defendant CITY is directly liable for compensatory damages under federal law pursuant to *Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978) and its progeny. Plaintiff GUERRERO further alleges that Defendant CITY is vicariously liable for compensatory damages under Plaintiff's state law claims, given Plaintiff's allegations that the officers who committed the acts and omissions complained of herein were acting in the course and scope of their employment at the time that the acts and omissions occurred. Plaintiff makes no claim for punitive damages against the Defendant CITY.

10. At all relevant times, Defendant LOURDES MARTINEZ ("MARTINEZ") was a duly appointed CITY Officer and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant MARTINEZ acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the OPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant MARTINEZ acted within the course and scope of their employment as a CITY police officer. On information and belief, Defendant MARTINEZ is and was at all relevant times a resident of this judicial district. Defendant MARTINEZ used excessive and unreasonable deadly force against Plaintiff GUERRERO.

11. At all relevant times, Defendant WILLIAM MLODZINSKI ("MLODZINSKI") was a duly appointed CITY Officer and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant MLODZINSKI acted under color of law, to wit, under the color of the statutes, ordinances,

regulations, policies, customs, and usages of Defendant CITY, the OPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant MLODZINSKI acted within the course and scope of his employment as a CITY police officer. On information and belief, Defendant MLODZINSKI is and was at all relevant times a resident of this judicial district. Defendant MLODZINSKI used excessive and unreasonable deadly force against Plaintiff GUERRERO.

12.    At all relevant times, Defendant GREGORY CLINTON ("CLINTON") was a duly appointed CITY Sergeant and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant CLINTON acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the OPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant CLINTON acted within the course and scope of his employment as a CITY police officer. On information and belief, Defendant CLINTON is and was at all relevant times a resident of this judicial district. Defendant CLINTON held Plaintiff GUERRERO down while Defendants MARTINEZ and MLODZINSKI used excessive and unreasonable deadly force against Plaintiff GUERRERO.

13.    At all relevant times, Defendant SETH BLACK ("BLACK") was a duly appointed CITY Officer and/or employee or agent of CITY, subject to the oversight and supervision of CITY'S elected and non-elected officials. At all relevant times, Defendant BLACK acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant CITY, the OPD, and under the color of the statutes and regulations of the State of California. At all relevant times, Defendant BLACK acted within the course and scope of their employment as a CITY police officer. On

information and belief, Defendant BLACK is and was at all relevant times a resident of this judicial district. Defendant BLACK failed to intervene when he saw Defendant CLINTON hold Plaintiff GUERRERO down while Defendants MARTINEZ and MLODZINSKI used excessive and unreasonable deadly force against Plaintiff GUERRERO.

14.    At all relevant times, Defendants DOES 1-5 ("DOE OFFICERS") were Officers for the OPD, including but not limited to patrol officers, crisis negotiations officers, corporals, sergeants, field training officers, dispatchers, and other officers and agents of OPD. DOE OFFICERS were acting under color of law within the course and scope of their duties as officers for the OPD. DOE OFFICERS were acting with complete authority and ratification of their principal, Defendant CITY.

15.    Defendants DOES 5-10 ("DOE SUPERVISORS") are supervisory officers, officials, agents, and/or employees for the OPD who were acting under color of law within the course and scope of their duties as officials for the OPD. DOE SUPERVISORS were acting with complete authority and ratification of their principal, Defendant CITY. Defendants DOE SUPERVISORS are managerial, supervisorial, and policymaking employees of the OPD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the OPD. DOE SUPERVISORS were acting with complete authority and ratification of their principal, Defendant CITY.

16.    The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiff, who otherwise sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the

fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

17.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

18.    All the acts complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Also, Defendants and their agents ratified all the acts complained herein.

19.    All Defendants who are natural persons, including Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10, inclusive, are sued in their individual capacity, and punitive damages are being requested as to these Defendants only, and not Defendant CITY.

20.    Pursuant to Cal. Govt. Code §815.2(a), Defendant CITY is vicariously liable for the nonfeasance and malfeasance of the individual Defendants, including Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10, inclusive, as alleged by Plaintiff's state law claims. ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."). The individual Defendants, including Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code §820(a). Defendant CITY is also liable pursuant to Cal. Govt. Code §815.6.

21.    On or about February 13, 2025, Plaintiff served a comprehensive and timely government tort claim for damages with CITY pursuant to applicable sections of the California Government Code.

22.    The claim was deemed rejected by operation of law on March 30, 2025.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

23.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 22 of this Complaint with the same force and effect as if fully set forth herein.

24.    On September 11, 2024, at approximately 4:32 a.m., at or around the 100 block of Euclid Ave., in the City of Ontario, County of San Bernardino, California, Defendants MARTINEZ, MLODZINSKI, CLINTON, and BLACK used excessive and unreasonable force, including deadly force, against Plaintiff GUERRERO and employed negligent tactics, including when they kneed him multiple times in the back and face.

25.    The use of deadly force against Plaintiff GUERRERO by Defendants MARTINEZ, MLODZINSKI, CLINTON, and BLACK was excessive and unreasonable because at the time deadly force was used, Plaintiff GUERRERO was not an immediate threat of death or serious bodily injury to any person, no deadly force warning was given prior to the use of deadly force, and there were reasonable less-intrusive alternatives to the use of deadly force available to said Defendants.

26.    Upon information and belief, Plaintiff GUERRERO was kneed in the head, face, and back multiple times by Defendants MARTINEZ and MLODZINSKI as Defendant CLINTON held Plaintiff Guerrero down. While Defendant BLACK witnessed this use of excessive force, he failed to intervene in the use of excessive force.

27.   The use of deadly force against Plaintiff GUERRERO by Defendants MARTINEZ, MLODZINSKI, CLINTON, and BLACK was excessive and unreasonable because immediately prior to and at the time of the use of deadly force: Plaintiff GUERRERO was not an immediate threat of death or serious bodily injury to any person; Plaintiff GUERRERO was not given a verbal warning that deadly force was going to be used; and Defendants MARTINEZ, MLODZINSKI, CLINTON, and BLACK had reasonable, less-intrusive alternatives to the use of deadly force at the time available to them, failed to use those alternatives, and failed to exhaust those alternatives.

28.   Defendants unreasonably escalated the situation when they began using deadly force against Plaintiff GUERRERO, causing him great fear, pain, and harm.

29.   Throughout the incident, the Defendants displayed negligent tactics, prior to, during, and after their uses of deadly force, including, but not limited to their: positioning, planning, communication, use of force, escalating the situation, and failing to de-escalate the situation.

30.   Further, Defendants' actions and inactions were unreasonable and in violation of basic officer training.

31.   As a direct and proximate result of the individual Defendants' actions, omissions, and misjudgments, including their use of excessive and unreasonable force, Plaintiff GUERRERO was caused to suffer great physical and mental pain and suffering, harm, injury, damages, loss of enjoyment of life, and permanent injury.

## **DAMAGES**

32.  Plaintiff GUERRERO was held down and then kneed in the head, face, and back by Defendants MARTINEZ, MLODZINSKI, and CLINTON while Defendant BLACK failed to intervene.

33.  Plaintiff GUERRERO was treated for an orbital floor blowout of his right eye. He underwent emergency surgery on his orbital floor and to address an entrapped inferior rectus muscle.

34.  As a direct and proximate result of the intentional conduct, negligent conduct, reckless disregard, deliberate indifference and otherwise wrongful conduct of Defendants, Plaintiff GUERRERO suffered and continues to suffer economic and non-economic damages including for the nature and extent of his injuries, his past and future disability, physical impairment, disfigurement, loss of enjoyment of life, mental, physical, emotional pain and suffering, inconvenience, grief, anxiety, humiliation and emotional distress, need for assistance, and loss of ability to provide household services.

35.  The conduct of the individual Defendant Officers was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff GUERRERO in that Plaintiff GUERRERO'S constitutional rights were intentionally deprived and violated, and/or there was reckless disregard for the constitutional rights of Plaintiff GUERRERO. As such, their conduct as alleged herein entitles Plaintiff GUERRERO to an award of exemplary and punitive damages from the individual Defendants. Plaintiff GUERRERO brings no action for punitive damages against Defendant CITY.

36.  Pursuant to 42 U.S.C. §1988(b), Plaintiff GUERRERO is entitled to recover reasonable attorney fees, costs, and interests incurred herein. Pursuant to Cal. Civ. Code §52.1, Plaintiff GUERRERO is entitled to recover civil penalties, costs, and reasonable attorney fees including treble damages. Pursuant to Cal. Code of Civ. Pro. §1021.5, Plaintiff seeks reasonable attorneys' fees.

## **FIRST CLAIM FOR RELIEF**

### **Fourth Amendment —Excessive Force (42 U.S.C. §1983)**

(Plaintiff against Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK,
and DOES 1-10)

37.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 36 of this Complaint with the same force and effect as if fully set forth herein.

38.    The Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10 were acting under the color of state law and within the course and scope of their employment.

39.    Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10 used excessive force against Plaintiff GUERRERRO when they used deadly force to strike Plaintiff GUERRERO in the head and face with their knees. Defendants' unjustified use of force deprived Plaintiff GUERRERO of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff GUERRERO under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

40.    Defendants violated Plaintiff GUERRERO'S Fourth Amendment rights when they used excessive and unreasonable deadly force against Plaintiff GUERRERO, striking his head and face with their knees, when Plaintiff GUERRERO was not an immediate threat of death or serious bodily injury at the time, there were other reasonable alternatives to the use of deadly force, and no verbal warning was given prior to the shots that deadly force would be used.

41.    As a result of the foregoing, Plaintiff GUERRERO suffered great physical and mental pain and suffering, loss of enjoyment of life, and permanent injury.

42.    The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff GUERRERO and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

43.    As a result of their misconduct, Defendants are liable for Plaintiff GUERRERO'S injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

44.    Plaintiff GUERRERO seeks compensatory and punitive damages.

45.    Plaintiff GUERRERO also seeks reasonable stautory attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(Plaintiff against Defendants CITY and DOE SUPERVISORS)

46.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 45 of this Complaint with the same force and effect as if fully set forth herein.

47.    The Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOE SUPERVISORS were acting under the color of state law and within the course and scope of their employment with Defendant CITY.

48.    The acts of Defendants deprived Plaintiff GUERRERO of his particular rights under the United States Constitution as alleged herein.

49.    Upon information and belief, a final policymaker, including DOE SUPERVISORS, ratified Defendants' acts and the bases for their actions. Upon information and belief, the final policymaker knew of and specifically approved of Defendants' conduct and the bases for them, including their actions and inactions, pre-shooting tactics, and use of deadly force.

50.    Upon information and belief, the written policies and basic officer training with respect to the incident include that law enforcement officers are not to use deadly force against an individual unless the individual poses an immediate risk of death or serious bodily injury to the officers or others. The Defendants' actions deviated from these written policies and basic law enforcement training because Plaintiff GUERRERO did not pose an immediate threat of death or serious bodily injury to the involved law enforcement officers or anyone else.

51.    Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants were "within policy," and have ratified multiple prior incidents of the use of excessive force, including excessive less-lethal force and deadly force.

52.    Upon information and belief, Defendant CITY approved of Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS' actions and inactions, after which Defendant CITY officials, including DOE SUPERVISORS, found the Defendants' conduct was within the official policies of Defendants CITY and/or consistent with CITY officers' basic training. On information and belief, the basis for such approval was based on the Defendants' self-serving statements, despite evidence that Plaintiff GUERRERO was not an immediate threat of death or serious bodily injury to anyone at the time the excessive force was used, reasonable alternatives were available, and no warning was given.

53.    Upon information and belief, after this incident, Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS were not disciplined, reprimanded, retrained, provided additional training, suspended, or otherwise penalized in connection with their conduct in this incident.

54.    Upon information and belief, the following are only a few examples of cases where the OPD officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the Defendant CITY routinely ratifies such behavior:

a.    In *Bernhard v. City of Ontario, et al.*, Case No. 2:08-cv-05539-RGK-CW, sometime in August of 2006, an OPD officer reported to a County Deputy District Attorney that another OPD officer was dishonest. When the DDA made this known to OPD officials, OPD's Internal Affairs division investigated the reporting officer and eventually suspended him. This case was resolved with a settlement in 2011.

b.    In *J.S. v. City of Ontario, et al.*, Case No. 2:09-cv-01990-GAF-PJW, on March 20, 2008, OPD officers shot and killed the father of three children, on his own property, while he was not committing a crime, and was not an immediate threat of death or serious bodily injury to anyone. Officers failed to give warnings and had less intrusive alternatives. The case resolved with a nine-figure settlement in 2011.

c.    In *C.M.G. v. City of Ontario, et al.*, Case No. 2:09-cv-03014MG-FMO, on April 29, 2007, OPD officers shot and killed a man during a traffic stop despite the fact that the decedent was not an immediate threat of death or serious bodily injury to anyone.

d.    In *Vera v. City of Ontario, et al.*, Case No. 5:20-cv-01855-JWH-SHK, on September 13, 2019, OPD officers stopped a man who was walking down the street under false pretenses. They then beat and choked him until he lost consciousness. The officer did this despite the fact that he was not an immediate threat of death or serious bodily injury to anyone.

e.    In *Martinez v. City of Ontario, et al.*, Case No. 5:21-cv-01099-JGB-SP, on July 19, 2019, OPD officers shot a man while he was driving

despite the fact that he was not an immediate threat of death or serious bodily injury to anyone. The man suffered serious injuries including paralyzation.

f.    In *Benavente v. City of Ontario, et al.*, Case no. 5:23-cv-00266-SSS-DTB, on February 22, 2021, OPD officers shot a man while he was driving despite the fact that he was not an immediate threat of death or serious bodily injury to anyone. Officers failed to timely summon medical care. As a result of their excessive use of force and failure to timely summon medical care, the man died.

g.    In *Rodriguez v. City of Ontario, et al.*, Case No. 5:23-cv-01971-MRA-SP, on May 27, 2022, after a police chase and once the man had stepped out of his vehicle and was attempting to surrender to OPD officers, OPD officers first ordered a K-9 unit to attack and subdue him, despite the fact that he was not an immediate threat of death or serious bodily injury to anyone, and then they fired multiple gunshots, eventually striking him twenty-two (22) times.

55.    Upon information and belief, Defendant CITY, through its officials, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged herein. Despite having knowledge as stated herein, these Defendant CITY officials condoned, tolerated, and through actions and inactions thereby ratified such deficient policies. In doing so, said Defendant CITY officials acted with deliberate indifference to the foreseeable effects and consequences of these deficient policies, including their policy of ratification, with respect to the constitutional rights of Plaintiff GUERRERO and other individuals similarly situated.

56.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant CITY officials acted with intentional, reckless, and callous disregard for the life and rights of Plaintiff

GUERRERO. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and their officials were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff GUERRERO.

57.    Accordingly, Defendant CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

58.    The conduct of the Defendant DOE SUPERVISORS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff GUERRERO and therefore warrants the imposition of exemplary and punitive damages as to the Defendant SUPERVISORS.

59.    Plaintiff GUERRERO seeks compensatory and punitive damages.

60.    Plaintiff GUERRERO also seeks reasonable statutory attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. §1983)

(Plaintiff against Defendants CITY and DOE SUPERVISORS)

61.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 60 of this Complaint with the same force and effect as if fully set forth herein.

62.    The Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, OPD DOE OFFICERS, and DOE SUPERVISORS were acting under the color of state law and within the course and scope of their employment with Defendants CITY.

63.    The acts of Defendants deprived Plaintiff GUERRERO of his particular rights under the United States Constitution as alleged herein.

64.    The training policies of Defendant CITY were not adequate to train their officers to handle the usual and recurring situations with which they must

deal. This includes training with respect to tactics, the use of force, including deadly force, de-escalation techniques, controlling officer emotions and fears, inappropriate "shoot/don't shoot" scenarios in training that promote the use of unreasonable force, and continually assessing a situation to justify every shot fired. In addition to failing to train officers to safely handle obvious, recurring situations, Defendant CITY affirmatively chose a policy it knew was likely to lead to, and in fact had previously led to, deprivations of constitutional rights including unreasonable seizures in violation of the Fourth Amendment.

65.    Defendants CITY and DOE SUPERVISORS were deliberately indifferent to the obvious consequences of its failure to train its officers adequately, including training with respect to tactics, the use of force, including deadly force, and de-escalation techniques.

66.    The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiff GUERRERO'S rights by Defendants; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff GUERRERO'S rights as to be the moving force that caused the ultimate injury.

67.    On information and belief, Defendant CITY failed to train Defendants properly and adequately, including regarding the following:

        a.  Not providing adequate time and resources for officers to train when the training does exist so that the officers can rely on that training during incidents.

        b.  Not enforcing the basic training standards, when they do exist, that are designed to prevent officers from using excessive and unreasonable force.

        c.  Not adequately providing recurring training so that officers do not lose necessary perishable skills, and not re-training officers who have used force in the field.

        d.  Effective communication to enable officers to gain cooperation and

voluntary compliance in stressful situations.

e.  Effective communication as a basic element of the use of force; the goal of which to gain voluntary compliance without resorting to physical force, especially deadly force.

f.  That the use of deadly force is the most serious decision a peace officer may ever have to make, and such a decision should be guided by the reverence for human life and used only when other means of control are unreasonable or have been exhausted.

g.  Reverence for life as the foundation on which the use of deadly force rests. Deadly force is always the last resort to be used in the direst of circumstances. The authority to use deadly force is an awesome responsibility given to peace officers by the people who expect them to exercise that authority judiciously. In the law enforcement/community partnership, the expectation that peace officers are self-disciplined and accountable.

h.  Self-control as one of a peace officer's greatest assets in dealing with a person or a situation.

i.  Unreasonable fear includes overreactions to true potential threats as well as reactions to unreal threats based on prejudice or poor application of experience.

j.  Unreasonable fear can be responsible for inappropriate responses such as a failure to respond or responding inappropriately (using unreasonable force).

k.  Unreasonable force occurs when the type, degree, and duration of force employed was neither necessary nor appropriate.

l.  The community expects that its peace officers will use only reasonable amounts of force and only use deadly force when

absolutely necessary. Likewise, it expects that someone, including

peace officers, will intervene if reasonable force is exceeded.

m. Use of other techniques to the use of deadly force including but are

not limited to de-escalation, communication, conflict resolution,

defensive tactics, less-lethal force, and use of time and distance.

n. That an officer's subjective fear of future harm alone is insufficient

as an imminent threat. An imminent threat is one that requires

instant attention.

o. Training with respect to tactics.

p. Training with respect to assessing when it is appropriate to use of

force, including deadly force, and training on how much force is

appropriate even when some force is appropriate.

68.    Upon information and belief, the following are only a few examples
of cases where the involved officers were not disciplined, reprimanded,
retrained, suspended, or otherwise penalized in connection with the underlying
acts giving rise to the below lawsuits, which indicates that the City of Ontario
failed to adequately train its officers with regard to the use of force:

a.    In *Bernhard v. City of Ontario, et al.*, Case No. 2:08-cv-
05539-RGK-CW, sometime in August of 2006, an OPD officer reported
to a County Deputy District Attorney that another OPD officer was
dishonest. When the DDA made this known to OPD officials, OPD's
Internal Affairs division investigated the reporting officer and eventually
suspended him. This case was resolved with a settlement in 2011.

b.    In *J.S. v. City of Ontario, et al.*, Case No. 2:09-cv-01990-
GAF-PJW, on March 20, 2008, OPD officers shot and killed the father of
three children, on his own property, while he was not committing a crime,
and was not an immediate threat of death or serious bodily injury to

anyone. Officers failed to give warnings and had less intrusive alternatives. The case resolved with a nine-figure settlement in 2011.

c.    In *C.M.G. v. City of Ontario, et al.*, Case No. 2:09-cv-03014MG-FMO, on April 29, 2007, OPD officers shot and killed a man during a traffic stop despite the fact that the decedent was not an immediate threat of death or serious bodily injury to anyone.

d.    In *Vera v. City of Ontario, et al.*, Case No. 5:20-cv-01855-JWH-SHK, on September 13, 2019, OPD officers stopped a man who was walking down the street under false pretenses. They then beat and choked him until he lost consciousness. The officer did this despite the fact that he was not an immediate threat of death or serious bodily injury to anyone.

e.    In *Martinez v. City of Ontario, et al.*, Case No. 5:21-cv-01099-JGB-SP, on July 19, 2019, OPD officers shot a man while he was driving despite the fact that he was not an immediate threat of death or serious bodily injury to anyone. The man suffered serious injuries including paralyzation.

f.    In *Benavente v. City of Ontario, et al.*, Case no. 5:23-cv-00266-SSS-DTB, on February 22, 2021, OPD officers shot a man while he was driving despite the fact that he was not an immediate threat of death or serious bodily injury to anyone. Officers failed to timely summon medical care. As a result of their excessive use of force and failure to timely summon medical care, the man died.

g.    In *Rodriguez v. City of Ontario, et al.*, Case No. 5:23-cv-01971-MRA-SP, on May 27, 2022, after a police chase and once the man had stepped out of his vehicle and was attempting to surrender to OPD officers, OPD officers first ordered a K-9 unit to attack and subdue him, despite the fact that he was not an immediate threat of death or serious

1    bodily injury to anyone, and then they fired multiple gunshots, eventually

2    striking him twenty-two (22) times.

3    69.    By reason of the aforementioned acts and omissions, Plaintiff

4    GUERRERO has suffered past and future pain and suffering, loss of enjoyment

5    of life, and permanent injury.

6    70.    Upon information and belief, Defendant CITY, through its officials,

7    had either actual or constructive knowledge of the deficient training policies,

8    practices, and customs alleged herein. Despite having knowledge as stated

9    herein, these Defendant CITY officials condoned, tolerated, and through actions

10    and inactions thereby ratified such deficient training. In doing so, Defendant

11    CITY officials acted with deliberate indifference to the foreseeable effects and

12    consequences of such deficient training with respect to the constitutional rights

13    of Plaintiff GUERRERO and other individuals similarly situated.

14    71.    Through its deficient training, Defendant CITY officials acted with

15    intentional, reckless, and callous disregard for the life and rights of Plaintiff

16    GUERRERO. Furthermore, the deficient training tolerated by Defendant CITY

17    and its officials were affirmatively linked to and was a significantly influential

18    force behind the injuries of Plaintiff GUERRERO.

19    72.    Accordingly, Defendant CITY is liable to Plaintiff for compensatory

20    damages under 42 U.S.C. §1983.

21    73.    The conduct of Defendants DOE SUPERVISORS in condoning,

22    maintaining, and providing deficient training was willful, wanton, malicious,

23    and done with reckless disregard for the rights and safety of Plaintiff

24    GUERREO, and therefore warrants the imposition of exemplary and punitive

25    damages as to Defendants DOE SUPERVISORS.

26    74.    Plaintiff GUERREO seeks compensatory and punitive damages.

27    75.    Plaintiff GUERREO also seeks reasonable stautory attorneys' fees

28    and costs.

**FOURTH CLAIM FOR RELIEF**

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Plaintiff against Defendants CITY and DOE SUPERVISORS)

76.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 75 of this Complaint with the same force and effect as if fully set forth herein.

77.    Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, OPD DOE OFFICERS, and DOE SUPERVISORS were acting under the color of state law and within the course and scope of their employment with Defendant CITY and OPD.

78.    Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

79.    On information and belief, Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff GUERRERO'S harm.

80.    Upon information and belief, in addition to those policies alleged above, Defendants CITY and DOE SUPERVISORS maintained, inter alia, the following unconstitutional customs, practices, and policies:

> a. Using excessive force, including excessive deadly force.
>
> b. Providing inadequate training regarding the use of deadly force.
>
> c. Employing and retaining as employees Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS, who Defendant CITY at all times material herein knew or reasonably should have known used excessive force.
>
> d. Inadequately supervising, training, controlling, assigning, and disciplining CITY officers, and other personnel, including Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and

OPD DOE OFFICERS, who Defendant CITY knew or in the exercise of reasonable care should have known had the propensities to use excessive force.

e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by CITY officials and Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS.

f. Failing to adequately discipline MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

g. Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional.

h. Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

i. Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officials do not report other officials' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another official, while following the code, the official being questioned will claim ignorance of the other officials' wrongdoing.

j. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement shootings, including by failing to discipline, retrain, investigate, terminate, and

recommend officials for criminal prosecution who participate in unreasonable shootings.

k. Upon information and belief, CITY, including but not limited to OPD, has an unofficial policy, practice and/or custom of finding almost all—if not all—of its officer involved shootings to be within policy, of not disciplining its officers involved in shootings, not retraining or firing officers involved in shootings, and of not recommending criminal charges against their officers involved in excessive and unreasonable officer-involved shootings. As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though CITY knew, or should have known, that these officers have a propensity for using excessive deadly force against the citizens that the officers are supposed to protect and serve, especially against minorities and the mentally ill.

l. Upon information and belief, as a result of CITY policy, custom and/or practices, OPD officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of CITY officers being involved in numerous shootings. This policy, custom and/or practice was established by supervising and managerial employees of CITY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force; and

m. Upon information and belief, this policy, custom and/or practice is

long lasting and persistent, and existed well before Plaintiff GUERRERO was struck by Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS. This policy, custom and/or practice was established so that CITY officers do not bear the responsibility for the people that they use excessive deadly force against. This policy, custom and/or practice exists so that the public does not have such a negative perception of CITY and its departments so that CITY can avoid the repercussions associated with its officers' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that this policy, custom and/or practice was established was to avoid CITY being liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees. In other words, there is a large financial incentive for CITY to erroneously determine that most, if not all, of its officers' uses of deadly force are within policy. If CITY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then CITY would be aware of how much they would have to pay for any associated litigation.

81.   Defendants CITY and DOE SUPERVISORS, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the

constitutional rights of Plaintiff GUERRERO and other individuals similarly situated.

82.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, DOE SUPERVISORS acted with intentional, reckless, and callous disregard for the life of Plaintiff GUERRERO and for Plaintiff GUERRERO'S constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOE SUPERVISORS were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff GUERRERO.

83.    Based on information and belief, the following are only a few examples of cases evidencing Defendant CITY'S unconstitutional policies, where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that CITY routinely ratifies such behavior and maintains a practice of allowing such behavior:

   a.    In *Bernhard v. City of Ontario, et al.*, Case No. 2:08-cv-05539-RGK-CW, sometime in August of 2006, an OPD officer reported to a County Deputy District Attorney that another OPD officer was dishonest. When the DDA made this known to OPD officials, OPD's Internal Affairs division investigated the reporting officer and eventually suspended him. This case was resolved with a settlement in 2011.

   b.    In *J.S. v. City of Ontario, et al.*, Case No. 2:09-cv-01990-GAF-PJW, on March 20, 2008, OPD officers shot and killed the father of three children, on his own property, while he was not committing a crime, and was not an immediate threat of death or serious bodily injury to anyone. Officers failed to give warnings and had less intrusive alternatives. The case resolved with a nine-figure settlement in 2011.

c.    In *C.M.G. v. City of Ontario, et al.*, Case No. 2:09-cv-03014MG-FMO, on April 29, 2007, OPD officers shot and killed a man during a traffic stop despite the fact that the decedent was not an immediate threat of death or serious bodily injury to anyone.

d.    In *Vera v. City of Ontario, et al.*, Case No. 5:20-cv-01855-JWH-SHK, on September 13, 2019, OPD officers stopped a man who was walking down the street under false pretenses. They then beat and choked him until he lost consciousness. The officer did this despite the fact that he was not an immediate threat of death or serious bodily injury to anyone.

e.    In *Martinez v. City of Ontario, et al.*, Case No. 5:21-cv-01099-JGB-SP, on July 19, 2019, OPD officers shot a man while he was driving despite the fact that he was not an immediate threat of death or serious bodily injury to anyone. The man suffered serious injuries including paralyzation.

f.    In *Benavente v. City of Ontario, et al.*, Case no. 5:23-cv-00266-SSS-DTB, on February 22, 2021, OPD officers shot a man while he was driving despite the fact that he was not an immediate threat of death or serious bodily injury to anyone. Officers failed to timely summon medical care. As a result of their excessive use of force and failure to timely summon medical care, the man died.

g.    In *Rodriguez v. City of Ontario, et al.*, Case No. 5:23-cv-01971-MRA-SP, on May 27, 2022, after a police chase and once the man had stepped out of his vehicle and was attempting to surrender to OPD officers, OPD officers first ordered a K-9 unit to attack and subdue him, despite the fact that he was not an immediate threat of death or serious bodily injury to anyone, and then they fired multiple gunshots, eventually striking him twenty-two (22) times.

84. By reason of the aforementioned acts and omissions, Plaintiff GUERRERO has suffered past and future pain and suffering, loss of enjoyment of life, and permanent injury.

85. Accordingly, Defendants CITY is liable to Plaintiff for compensatory damages under 42 U.S.C. §1983.

86. The conduct of Defendants DOE SUPERVISORS in condoning, maintaining, and providing these longstanding unconstitutional policies, customs, and/or practices was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff GUERRERO, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE SUPERVISORS.

87. Plaintiff GUERRERO seeks compensatory and punitive damages.

88. Plaintiff GUERRERO also seeks reasonable statutory attorneys' fees and costs

## FIFTH CLAIM FOR RELIEF

### Battery (Cal. Govt. Code §820 and California Common Law)

(Plaintiff against Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS in their individual capacity, directly; and Defendant CITY vicariously)

89. Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as if fully set forth herein.

90. Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOE OFFICERS, while working as officials for the OPD respectively and acting within the course and scope of their duties, intentionally struck Plaintiff GUERRERO multiple times and used unreasonable and excessive force against him.

91.    The use of deadly force against Plaintiff GUERRERO by Defendants was unreasonable because Plaintiff GUERRERO did not pose an immediate threat of death or serious bodily harm to any person any the time, there were less lethal alternatives, and no verbal warning was given.

92.    At all relevant times, Plaintiff GUERRERO was not an immediate threat of bodily injury to anyone, including Defendants.

93.    Plaintiff GUERRERO never consented to the use of force used against him by Defendants.

94.    Plaintiff GUERRERO was harmed when he was kneed multiple times, and experienced severe pain and suffering, injury, and damages.

95.    The Defendants' use of unreasonable force, including deadly force, was the direct cause, proximate cause, and only cause of Plaintiff GUERRERO'S pain and suffering, injury, harm, and damages. In other words, the unreasonable force was at least a substantial factor in causing Plaintiff GUERRERO'S pain and suffering, injury, harm, and damages.

96.    Defendants caused various injuries as mentioned herein and are liable either because they directly harmed Plaintiff GUERRERO or integrally participated in or failed to intervene in the incident and engaged in other acts and/or omissions around the time of the incident. Defendants' acts and omissions resulted in harmful and offensive touching of Plaintiff GUERRERO.

97.    Defendants are directly liable for their actions and inactions pursuant to Cal. Govt. Code §820(a).

98.    Defendant CITY is vicariously liable for the wrongful acts of their employees, including Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

99.    The conduct of Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiff, entitling Plaintiff GUERRERO to an award of exemplary and punitive damages as to these Defendants.

100.    Plaintiff GUERRERO seeks compensatory damages and punitive damages.

## SIXTH CLAIM FOR RELIEF

**Negligence (Cal. Govt. Code §820 and California Common Law)**

(Plaintiff against Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS in their individual capacity, directly; and Defendant CITY vicariously)

101.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 100 of this Complaint with the same force and effect as if fully set forth herein.

102.    At all relevant times, Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOE OFFICERS were working as officials for the OPD and acted under color of state law and within the course and scope of their duties.

103.    Peace officers, including Defendants, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort. These duties also include providing proper training and equipment to officials so that they may perform their duties in accordance with the department policies, properly investigate use of force incidents, and punish, re-train, terminate, and/or prosecute violators of those policies and the law.

104.    Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOE OFFICERS breached their duty of care by their conduct as alleged herein. Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

a.  The failure to properly and adequately assess the need to use force or deadly force against Plaintiff GUERRERO.

b.  The negligent tactics and handling of the situation with Plaintiff GUERRERO, including pre-attack negligence.

c.  The failure to properly train and supervise employees, both professional and non-professional, including Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10.

d.  The negligent handling of evidence and witnesses.

e.  The negligent communication of information during the incident.

f.  The negligent failure to intervene and stop the attack.

105.  As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Plaintiff GUERRERO was caused to suffer severe pain and suffering. In other words, the Defendants' negligence was at least a substantial factor in causing Plaintiff GUERRERO'S harm, injury, and damages.

106.  At all relevant times, Plaintiff GUERRERO was not an immediate threat of death or serious bodily injury to anyone, including Defendants, no warning was given that deadly force was going to be used prior to the use of deadly force, and less intrusive alternatives were available to Defendants.

107.  Further, Plaintiff GUERRERO'S harm, specifically being kneed in the head and face by the Defendants when Plaintiff GUERRERO was not an immediate threat of death or serious bodily injury to anyone, ordinarily would not have happened unless Defendants were negligent.

108.  The harm inflicted by Defendants was caused by something that only the Defendants controlled. The Defendants had control over their own bodies, as well as control over the tactical decisions made during the incident.

109.  As a result of their misconduct, Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10 are liable for Plaintiff GUERRERO'S injuries, either because they were integral participants in their negligence, or because they failed to intervene to prevent these violations.

110.  Pursuant to Cal. Gov't Code §820(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

111.  Defendant CITY is vicariously liable for the wrongful acts of Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability. Defendant CITY is vicariously liable under California law and the doctrine of *respondeat superior*.

112.  Plaintiff seeks attorneys' fees under this claim pursuant to Cal. Code of Civ. Pro. §1021.5 for enforcement of the important rights affecting the public interest that Plaintiff, and those similarly situated, have to be free from intimidation and physical assault by law enforcement as described herein.

113.  Plaintiff GUERRERO seeks compensatory damages, including general and special damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Bane Act (Violation of Cal. Civil Code §52.1)

(Plaintiff against Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and OPD DOE OFFICERS in their individual capacity, directly; and Defendant CITY vicariously)

1    114. Plaintiff repeats and re-alleges each and every allegation in

2  paragraphs 1 through 113 of this Complaint with the same force and effect as if

3  fully set forth herein.

4    115. California Civil Code, Section 52.1 (the Bane Act), prohibits any

5  person from using or attempting to use violent acts, threats, intimidation, or

6  coercion to interfere with the exercise or enjoyment by any individuals' rights

7  secured by the Constitution or laws of the United States, or of the rights secured

8  by the Constitution or laws of this state in retaliation against another person for

9  exercising that person's constitutional rights.

10   116. On information and belief, Defendants MARTINEZ,

11  MLODZINSKI, CLINTON, BLACK, and DOES 1-10, while working for CITY

12  and acting within the course and scope of their duties, intentionally committed

13  and attempted to commit acts of violence against Plaintiff GUERRERO,

14  including by striking him with their knees without justification or excuse, and

15  by integrally participating and failing to intervene in the above violence.

16   117. When Defendants used excessive and unreasonable force against

17  Plaintiff GUERRERO, they intentionally interfered with his civil rights to be

18  free from excessive force.

19   118. Further, the Defendants used excessive and unreasonable force in

20  violation of the Constitution with intent to deprive Plaintiff GUERRERO of his

21  Constitutional rights to be free from excessive force.

22   119. On information and belief, Defendants intentionally violated

23  Plaintiff GUERRERO'S rights to be free from excessive force by demonstrating

24  reckless disregard for his rights when Defendants struck Plaintiff GUERRERO

25  with their knees.

26   120. Defendants violated Plaintiff GUERRERO'S Constitutional right to

27  be free from excessive and unreasonable force by peace officers. Defendants

28  intended to violate Plaintiff GUERRERO'S rights and/or acted with reckless

disregard with regard to Plaintiff GUERRERO'S Constitutional rights, which is evidence that they intended to violate Plaintiff GUERRERO'S rights.

121.  The conduct of Defendants was a substantial factor in causing Plaintiff GUERRERO'S harms, losses, injuries, and damages.

122.  Defendant CITY is vicariously liable for the wrongful acts of Defendants MARTINEZ, MLODZINSKI, CLINTON, BLACK, and DOES 1-10, their respective employees, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability. Defendant CITY is vicariously liable under California law and the doctrine of *respondeat superior*.

123.  The conduct of the individual Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Plaintiff GUERRERO'S rights, justifying an award of exemplary and punitive damages as to those Defendants.

124.  Plaintiff GUERRERO seeks compensatory damages, punitive damages, costs, attorneys' fees, and treble damages under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JASON GUERRERO requests entry of judgment in his favor and against Defendants CITY OF ONTARIO; LOURDES MARTINEZ; WILLIAM MLODZINSKI; GREGORY CLINTON; SETH BLACK, and DOES 1-10, inclusive, as follows:

A.      For compensatory damages in whatever other amount may be proven at trial, under federal and state law.

C.      For punitive and exemplary damages against the individual defendants in an amount to be proven at trial.

D.      For statutory damages.

F.      For reasonable attorneys' fees, and treble damages, including litigation expenses.

G.      For interests and costs of suit; and

H.      For such further other relief as the Court may deem just, proper, and appropriate.

DATED:     September 22, 2025          **GRECH, PACKER, & HANKS**

By:      _/s/ Trenton C. Packer_
          Trenton C. Packer
          *Attorneys for Plaintiff* Jason Guerrero

PLAINTIFF GUERRERO'S COMPLAINT FOR DAMAGES

1

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff GUERRERO hereby submits this demand that this action be tried in front of a jury.

DATED:        September 22, 2025          **GRECH, PACKER, & HANKS**

By:    _____/s/ Trenton C. Packer_____

Trenton C. Packer
*Attorneys for Plaintiff*